**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DONNA NORRIS,  )  ) | CASE NO.   1:10-cv-1297 |
| Plaintiff,  )  ) | |
| v.  ) | MAGISTRATE JUDGE GREG WHITE |
|  ) | |
| MICHAEL J. ASTRUE,  ) | |
| Commissioner of Social Security  ) | **MEMORANDUM OPINION & ORDER** |
|  ) | |
| Defendant.  ) | |

Plaintiff Donna Norris ("Norris") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Norris's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On May 11, 2006, Norris filed an application for SSI alleging a disability onset date of October 13, 2005.  Her application was denied both initially and upon reconsideration.  Norris timely requested an administrative hearing.

On November 20, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Norris, *pro se*, testified. Barbara E. Burk testified as an impartial vocational expert ("VE"). On July 2, 2009, the ALJ found Norris was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age fifty-two (52) at the time of her administrative hearing, Norris is a "person closely approaching advanced age" under the social security regulations. *See* 20 C.F.R. § 416.963(d). Norris has a marginal (sixth grade) education and past relevant work as a fast food cook, commercial cleaner, and hand packager. (Tr. 21.)

*Hearing Testimony*

At the hearing, Norris testified to the following:

- She last worked in 2002. (Tr. 36.)

- She lives alone. (Tr. 36.) She sometimes performs house cleaning, but does not cook or do laundry. (Tr. 37.)

- She has a driver's license. *Id*.

- On a typical day, she watches television. She tries not to go out because it scares her to be around other people. (Tr. 37-38.)

- She goes grocery shopping twice a month, and talks with friends and relatives on the phone. (Tr. 38.)

- Seeing a psychiatrist and taking numerous medications has not helped. The medications cause her to feel tired. (Tr. 38.)

- Because of hallucinations, she attended counseling every two weeks for a year. (Tr. 39.)

- She has a heart condition and takes nitroglycerin two to three times a month for chest pain. (Tr. 40.)

- She often has trouble breathing. She takes medication and uses oxygen primarily at night to help her breathing. (Tr. 40-41.)

- She cannot walk a block without stopping to catch her breath. She can stand for about fifteen minutes at a time and lift five pounds. (Tr. 41.)

- She handles her own finances. (Tr. 41.)

The ALJ asked the VE to assume the following hypothetical individual:

If an individual has the following limitations, they could occasionally lift 20 pounds, frequently lift 10 pounds, could sit, stand, and walk for six hours in an eight-hour day but could never climb ladders, ropes, or scaffolds, they must avoid hazards such as being on unprotected heights or around dangerous moving machinery, they can only do moderately complex three-and four-step tasks with no strict time or production demands and only superficial contact with the public, could they do any of these jobs?

***

Added to that, an inability to tolerate even moderate exposure to pulmonary irritants, does that change your response?

(Tr. 44-45.)

Based on the above, the VE testified that Norris would be unable to perform her past work, but could perform the position of cashier, Dictionary of Occupational Titles ("DOT") § 211.467-010, fast food worker, DOT § 311.472-010, and dining room/cafeteria attendant DOT § 311.677-010. (Tr. 45-46.) All three positions identified were categorized as light and unskilled. *Id*. The VE also testified that if the hypothetical person were limited to only superficial interaction with the public, such person could still perform the identified jobs. (Tr. 46-47.) However, a complete bar to interaction would render the hypothetical person unemployable. (Tr. 47.)

3

### III. Standard for Disability

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Norris established medically determinable, severe impairments, due to coronary artery disease, seizures, anxiety, and borderline intellectual functioning. (Tr. 15.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16-17.) Norris was found incapable of performing

her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 21-22.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Norris is not disabled. `

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

*Severe Impairments*

Norris claims that the ALJ erred by failing to include among her severe impairments chronic obstructive pulmonary disease (COPD) and obstructive sleep apnea. The Commissioner asserts that the evidence supporting Norris's diagnoses of COPD and obstructive sleep apnea was not part of the record on the date the ALJ issued her decision, July 2, 2009. (ECF No. 22 at 19.)

The record reveals that the Appeals Council received Exhibit 29F as "additional evidence." (Tr. 4-5.) Evidence first submitted to the Appeals Council, may be considered only to determine whether the case should be remanded under section six of 42 U.S.C. § 405(g). *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Washington-Wheeler v. Comm'r of Soc. Sec.*, 2010 WL 376329, *1 (fn. 2)

(E.D. Mich. Jan. 26, 2010).  Exhibit 29F is located between pages 430 through 461 of the administrative record.  Norris cites treatment notes, dated December 21, 2007 and September 9, 2008, indicating that she had "obstructive sleep apnea, on CPAP" and "shortness of breath, most likely because of underlying COPD."  (Tr. 442, 451.)  Though these records pre-date the ALJ's decision, they were, nonetheless, not part of the record at the time of the decision.  Norris also points to a diagnosis of sleep apnea during an examination occurring on July 21, 2009 – weeks after the ALJ's decision.  (Tr. 434.)   As such, Norris has not identified a single record containing a diagnosis for either COPD or obstructive sleep apnea that was actually part of the record at the time the ALJ rendered her decision.  (ECF No. 18 at 7-8, 12.)  Furthermore, Norris has not argued that this matter should be remanded for the consideration of new evidence based on sentence six of 42 U.S.C. § 405(g).[1]  As neither of these conditions was identified in the records before the ALJ, it was not unreasonable for the ALJ to omit them from her finding of Norris's severe impairments.

---

[1] This Court cannot conduct a *de novo* review or invalidate the ALJ's decision based on new evidence that was not part of the record.  While sentence six allows a court to remand for consideration of new evidence that was not previously before the agency, Norris must demonstrate that there is "new evidence which is material and that there is ***good cause for failure to incorporate such evidence into the record in a prior proceeding***."  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (emphasis added).  Norris has failed to demonstrate good cause or drawn this Court's attention to any obstacles that prevented her from submitting evidence in a timely manner.  Medical evidence that post-dates the ALJ's decision also fails to satisfy the good cause requirement.  *See, e.g., Merida v. Astrue*, 2010 U.S. Dist. LEXIS 91500 (E.D. Ky. Aug. 30, 2010) (noting that the Sixth Circuit "takes a hard line on the good cause test" and that medical reports post-dating the Commissioner's final decision do not demonstrate good cause) (*quoting Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  Thus, any such argument is deemed waived.  If Norris feels her condition has deteriorated and that she is disabled, she "retains the right to submit a new application for benefits based upon the newly-obtained evidence of claimed disability." *Id*. (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)).

Furthermore, assuming *arguendo* that the ALJ should have designated these impairments as severe, despite their absence from the record, there would be no reversible error. At step two, the Commissioner considers whether a claimant has an impairment or combination of impairments that is severe and that meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The Social Security Association has determined that a "severe impairment" is an impairment or combination of impairments that "significantly limit a claimant's physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520 (c), 416.920 (c). In the Sixth Circuit, if the medical evidence alone indicates that a claimant's impairments impact his or her ability to perform basic work activities in even a *de minimis* way, a determination that the impairments are not severe would be unsupported by substantial evidence. *See Halcomb v. Bowen*, No. 86-5493, 1987 WL 36064, at *3 (6th Cir. May 27, 1987); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 691-92 (6th Cir. 1985).

Nonetheless, if the ALJ finds at least one impairment to be "severe," she must move on to the subsequent steps in the evaluation. She is not required to continue to analyze the remainder of the claimant's impairments to determine whether they too are severe. "[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Hickox v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 87813 at *13 (W.D. Mich. Aug. 2, 2010) ("The finding of at least one severe impairment is sufficient to trigger further analysis.

The ALJ's failure to find additional severe impairments at step 2 is 'legally irrelevant.'") (*quoting McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008)).

The ALJ, after finding that Norris had several other severe impairments, properly continued on to the remaining steps of the sequential evaluation. Moreover, there is no indication that the ALJ failed to consider all of Norris's impairments in the remaining steps of the disability determination, including her breathing problems. In addition to the medical records not before the ALJ, Norris identifies two pulmonary function studies. The ALJ expressly considered these studies:

> [A] February 2006 pulmonary function report showed no significant abnormalities
> (Exhibit 2F/13).[2]
>
> ***
>
> In March 2008, the claimant underwent a pulmonary function test, which revealed moderate obstructive ventilatory impairment (Exhibit 21F/3). However, the attending physician noted that her condition improved after bronchodilators (Exhibit 21F/3). The residual functional capacity adopted here ... includes avoidance of even moderate exposure to pulmonary irritants to accommodate this condition, in addition to limiting strenuous lifting.

(Tr. 19.)

The ALJ did not err by failing to designate COPD and/or obstructive sleep apnea as severe impairments at Step Two because: (1) Norris has not identified any documents that contain such diagnoses that were before the ALJ; and (2) the ALJ considered Norris's pulmonary capabilities in general beyond Step two of the sequential evaluation. As such, Norris first

---

[2] The study dated February 22, 2006, indicated that while "[t]he functional residual capacity ... [was] slightly diminished[,] [t]he total lung capacities are in the low range of normal." (Tr. 201.)

assignment of error is not well taken.

*Inaccurate Hypothetical*

Norris, in a related argument, asserts that the ALJ erred by failing to pose a proper hypothetical question to the VE.  Specifically, Norris argues that the ALJ should have included limitations restricting the hypothetical person to two hours of standing/walking per work day and to simple, repetitive tasks.  (ECF No. 18 at 14.)

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant.  *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  In fashioning a hypothetical  question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible.  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence.  *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

The ALJ found that Norris's allegations regarding her inability to stand for more than fifteen minutes, walk for more than a block, and lift more than five pounds, were not credible.  (Tr. 18.)  The ALJ also throughly analyzed the intelligence testing that Norris underwent in July of 2006.  (Tr. 20.)  Norris has not challenged the propriety of the ALJ's credibility analysis or

the weight accorded to the various physicians of record.³ As such, Norris's argument amounts to an invitation for this Court to conduct a *de novo* review of the evidence. This Court, however, cannot conduct such a review. The ALJ was not bound to incorporate Norris's allegations, which were not credited, into the hypothetical.

As the VE's testimony was given in response to a hypothetical that reasonably reflected all the limitations that the ALJ found valid and credible, the VE's testimony constitutes substantial evidence capable of supporting the finding that Norris could perform jobs existing in significant numbers in the regional and national economies. It is immaterial that there may exist evidence in the record that could support the opposite conclusion, as the ALJ has a zone of choice within which she can act without court interference. As such, Norris's second assignment of error is without merit.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White<br>U.S. Magistrate Judge

Date: June 20, 2011

---

³ Notably, Norris's citations to the record are to her own subjective complaints.